

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2004

# USA v. West

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3700

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. West" (2004). *2004 Decisions.* Paper 570.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/570

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3700

UNITED STATES OF AMERICA

v.

CHARLES WEST,
                    Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 02-cr-00234)
District Judge:  Honorable William W. Caldwell

Submitted Under Third Circuit LAR 34.1(a)
May 26, 2004

Before:  SCIRICA, Chief Judge, RENDELL and ALARCÓN*, Circuit Judges.

(Filed:   June 30, 2004)

OPINION OF THE COURT

*Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the
Ninth Circuit, sitting by designation.

RENDELL, Circuit Judge.

Charles West entered a conditional guilty plea to possessing ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g). As part of his plea, West reserved the right to challenge the police stop that resulted in his arrest, as violative of the fourth amendment. The District Court denied his pre-trial motion to suppress the ammunition and certain inculpatory statements made to federal agents, concluding that the stop was justified by West's nervous behavior. We have jurisdiction under 18 U.S.C. § 3731. We will affirm, albeit on grounds somewhat different from the District Court.

I.

The facts underlying this dispute are largely uncontroverted. On August 27, 2002, Special Agents Endy and Graybill of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), with over seventeen years combined experience at the ATF, were conducting an investigation unrelated to this case at Danny's Sporting Goods in Harrisburg, Pennsylvania. The plain-clothed agents remained in the parking lot after concluding their investigation, when their attention was drawn to the defendant, West, and his companion, Marcus Bethea. According to the agents' testimony, West and Bethea drove into the lot and remained in their car, staring at the agents. Both agents testified that the men appeared hesitant to leave their vehicle. When they finally emerged, West and Bethea repeatedly looked over and then away from the agents.

The agents then telephoned an employee inside the store, who informed them that West and Bethea were purchasing ammunition. When West and Bethea left the store, the

2

agents stated that the two men again seemed nervous and unsure of their movements, even bumping into each other on their walk back to the car. The agents further testified that, upon leaving the store, West had tucked a small package into the waistband of his pants. After West and Bethea got into their car, the agents approached the passenger side of the vehicle, where West was seated, identified themselves, and asked what the two men were doing. West replied that he had purchased ammunition for a friend. Agent Endy then requested identification from both West and Bethea. West turned over a Pennsylvania identification card, but Bethea, in the driver's seat, had none.

Agent Endy called in a criminal background check at ATF headquarters. The agents testified that Bethea had placed the car keys into the ignition and began fidgeting with them. As a precaution, the agents asked to hold onto Bethea's car keys. Before the background check was complete, Agent Endy asked the suspects if they had ever been convicted of a crime. West replied that he had been convicted for stealing cars. The ATF background check revealed that West had prior arrests for drug violations, aggravated assault, stolen vehicles, and receiving stolen property. The local police were called and West was arrested on an outstanding warrant for probation violation.

Based on the aforementioned facts, the District Court denied West's motion to suppress the evidence, finding that West's nervous behavior, both upon entering and exiting the store, justified the agents' reasonable suspicion, pursuant to Terry v. Ohio, 392 U.S. 1 (1968).

We review the District Court's determinations of reasonable suspicion *de novo* and

findings of fact for clear error. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000).

II.

Under Terry and its progeny, a police officer may conduct a short investigatory stop if he can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. Reasonable suspicion is an objective standard determined by the totality of the circumstances, United States v. Cortez, 449 U.S. 411, 417 (1981), and while certain behavior may be entirely legal, it can, nonetheless, lead to an inference of criminal activity. United States v. Ubiles, 224 F.3d 213, 217 (3d Cir. 2000).

The District Court found that reasonable suspicion could be established solely on the basis of West's nervous behavior. While such behavior clearly is relevant in the assessment of whether there was reasonable suspicion, it is not necessarily enough, standing alone. The District Court relied on Illinois v. Wardlow, 528 U.S. 119, 124 (2000), in which the Supreme Court noted that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." But neither Wardlow nor the decisions of this Court have ever held that nervousness alone justifies reasonable suspicion. In Wardlow, the Court held that flight from police officers in a high crime area, and not flight by itself, constituted reasonable suspicion. As stated recently by this Court, "[i]n Wardlow, the Supreme Court carefully distinguished unprovoked flight in a high crime area . . . from mere nervousness or evasiveness." Johnson v. Campbell, 332 F.3d 199,

4

208 (3d Cir. 2003); see also United States v. Bonner, 363 F.3d 213, 217 (3d Cir. 2004) ("[T]he Supreme Court has never held that unprovoked flight alone is enough to justify a stop.").

Nonetheless, here, the totality of the circumstances supports a finding of reasonable suspicion. The nervous behavior was accompanied by other conduct. The two men appeared hesitant to exit their car, repeatedly stared at the agents when entering the store, and even tripped over each other while walking back to their car. And, in addition to observing this nervous behavior, both agents testified that West concealed a package in his waistband. Moreover, after speaking with the store employer, the agents were aware that West was concealing a potentially lethal package, the recently purchased ammunition. These facts leading up to the Terry stop, in light of the experienced agents' "commonsense judgments and inferences about human behavior" at the time of the seizure, unquestionably supported the agents' reasonable suspicion to stop and question West. Wardlow, 528 U.S. at 125.

### III.

For the foregoing reasons, the judgment of the District Court will be AFFIRMED.

_____